

# The Attorney General of Texas

December 31, 1985

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mrs. Betty J. Pope
Executive Secretary
Texas Board of Land Surveying
1106 Clayton Lane, Suite 210W
Austin, Texas   78723

Opinion No. JM-418

Re: Whether plats required by Railroad Commission rule to accompany applications for certain drilling permits must be prepared by registered public surveyor

Dear Mrs. Pope:

On behalf of the Texas Board of Land Surveying, you ask whether a "plat" which accompanies an application form filed with the Texas Railroad Commission must be prepared by a public surveyor registered under article 5282c, V.T.C.S., the Land Surveying Practices Act of 1979. Form W-1, about which you inquire, was developed by the Railroad Commission for operators of oil, gas, or geothermal resource wells to use in applying for permits to drill, deepen, or plug back a well, or in applying for exceptions from the statewide spacing rules. See Railroad Commission Rules codified at 16 T.A.C. §3.5 (application to drill or deepen or plug back); 16 T.A.C. §3.37 (statewide spacing rule). The rule governing the application procedure states that the application shall be filed on a form approved by the commission. 16 T.A.C. §3.5(a). This rule was promulgated pursuant to the commission's authority to make rules to prevent the waste of oil and gas, to require dry or abandoned wells to be plugged, and to provide for the issuance of permits necessary to enforce rules on the prevention of waste. Nat. Res. Code §§85.201, 85.202, 86.042.

The instructions on Form W-1 state that the form must be accompanied by a neat, accurate plat of the lease or unit which shows, among other items, the drilling unit boundary for the proposed location; surface location of the proposed site; perpendicular distance to the nearest intersecting lease/unit lines and survey/section lines; distance to the nearest applied for, permitted, or completed well on the lease or unit, and section, block, or lot. In particular cases, much of this information will be available from surveys that have already been made. See generally Nat. Res. Code §23.054 (right to inspect county surveyor's plats, maps, and other records); §§34.020, 35.017, 36.016 (surveys and other records of leases on state lands filed with General Land Office). Letters submitted in connection with your request state that the position of a new well can be determined by measurement from an existing marker and

indicate that this location can be recorded on a map based on a prior survey.

The Railroad Commission submitted the following information about Form W-1:

> Appended to the application is a plat or sketch of the well area. . . . Note the instructions for plats on the back of this form.
>
> These documents are not used in the chain of title, but enable Commission staff to determine if the proposed well location complies with the Commission's spacing rules. Once the application is approved, the Commission's mapping section plots the proposed well on the county maps in the map room. . . .
>
> From time to time, the exact location of a well may become a pivotal issue in a contested case. The parties usually resort to a certified plat to settle this fact issue.
>
> In general practice, however, some operators submit certified plats, while others submit hand-drawn sketches which conform to the instructions on the back of Form W-1.

Thus, the commission will accept a hand drawn sketch as the "plat" it requires to be submitted with Form W-1.

The request letter, however, expresses the opinion that the plats to be drawn on Form W-1 are products of public surveying and therefore may be prepared only by a person registered, licensed, or exempted under the Land Surveying Practices Act of 1979. V.T.C.S. art. 5282c, §3. This statute defines "public surveying" as

> the practice for compensation of determining the boundaries or the topography of real property or of delineating routes, spaces, or sites in real property for public or private use by using relevant elements of law, research, measurement, analysis, computation, mapping, and land description writing. Public surveying includes the practice for compensation of land, boundary, or property surveying or other similar professional practices. (Emphasis added).

Id. §2(1). The underlined language, in our opinion, refers to those elements of law, measurement, computation, mapping, etc., which are

relevant to surveying. Those elements and the term "public surveying" receive fuller definition by reference to the history and purpose of regulating surveyors, statutes governing surveys, and custom and practice in the field.

The first Texas statutes governing surveyors were enacted to ensure accurate measurement of land grants and public recording of legal title to patented land. Board of Examiners of State Licensed Land Surveyors, Staff Report to Sunset Advisory Commission (February 20, 1978). In 1919 surveyors of unpatented land were made subject to licensing by the Board of Examiners of State Land Surveyors, and they eventually were authorized to file field notes on all public lands. Id. at 3-4. By 1955 increased subdivision of land and skyrocketing land values made additional accuracy in surveying practices necessary to protect owners and purchasers of land. Texas State Board of Registration for Public Surveyors, Report to the Sunset Advisory Commission at I-1 (October 30, 1977). The Texas State Board of Registration for Public Surveyors was established to regulate surveying activities relevant to subdividing land tracts and relocating property lines, boundaries, rights-of-way, easements or elevations. Texas State Board of Registration for Public Surveyors, Staff Report to the Sunset Advisory Commission at 5 (February 20, 1978). The definition in the Registered Public Surveyor Act of 1955 reflected these purposes:

> Public Surveying is the science or practice of land measurement according to established and recognized methods engaged in and practiced as a profession or service available to the public generally for compensation, and comprises the determination by means of survey, of the location or relocation of land boundaries and land boundary corners; the calculation of area and the preparation of field note description of surveyed land; the preparation of maps showing the boundaries and areas of the subdivision of tracts of land into smaller tracts; the preparation of official plats or maps of said land and subdivisions in compliance with the laws of the State of Texas and the political subdivisions thereof; and such other duties as sound surveying practice would direct.

Acts 1955, 54th Leg., ch. 328, §2(b) (formerly codified at art. 5282a, §2(b). The present definition of "public surveying" was first adopted in 1977 to provide a clearer definition of that term. Bill Analysis to S.B. No. 144, 65th Leg., 1977, for House Committee on State Affairs; Acts 1977, 65th Leg., ch. 37 at 72.

Historically, Texas has regulated surveyors to ensure that land would be correctly measured and boundaries correctly determined where a high degree of accuracy is necessary to protect the public in land transactions and to ensure the reliability of land titles. The definition of public surveying does not encompass all measurements taken within defined boundaries or all graphic representations of those measurements. Cf. Keer v. Fee, 161 N.W. 545, 547 (Iowa 1917) (distinguishes between surveying land and computing area).

The Railroad Commission developed Form W-1 for its own use in implementing its rule. It apparently can make permit and spacing decisions based on measurements that do not reach the high degree of accuracy achieved by surveying. The commission, in the exercise of reasonable determination, may decide that applicants can provide it sufficient information without surveying the well location or resurveying existing boundary lines. Although Form W-1 refers to a "plat," this term does not refer to the precise and detailed plat used to record property lines in public records. See V.T.C.S. art. 974a (approval and recording of subdivision plats). "Plat" also means a plan, map, or chart. See Websters Third New International Dictionary (1961). The reference to "plat" in the instructions on Form W-1 must be taken in the latter sense. The "plat" filed with the Railroad Commission in connection with Form W-1 is not required to be prepared by a public surveyor registered under article 5282c, V.T.C.S. If in a given case, the required information cannot be provided without doing a survey, or if an applicant chooses to have a survey done, these must be performed consistently with the requirements of article 5282c, V.T.C.S.

## S U M M A R Y

The sketches or "plats" of proposed well locations required to accompany applications to the Railroad Commission for certain drilling permits need not be prepared by a public surveyor registered under article 5282c, V.T.C.S.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General